Donald H. SKUSE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–885.

Court of Appeals of Alaska.

Feb. 14, 1986.

Donald H. Skuse, Soldotna, in pro. per.

Shannon D. Turner, Asst. Dist. Atty., Thomas Wardell, Dist. Atty., Kenai, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

SINGLETON, Judge.

Donald H. Skuse was convicted of refusal to submit to a chemical test, AS 28.35.-032(a). He appeals, *in propria persona.* We affirm.

The primary question on appeal is whether the trial court's denial of Skuse's re-

quest that he be represented by a lay person at trial was either (a) a denial of his constitutional right to counsel or (b) an abuse of discretion.

At his arraignment before Magistrate Brigitte McBride, Skuse informed the court that he would be representing himself. He also gave his written consent to trial before a magistrate (in this case, a nonlawyer).[1]

Three months before trial, Skuse requested in a written motion that he be allowed "counsel of choice," a nonlawyer. In a legal memorandum offered in support of his motion, Skuse argued that the word "counsel" in the sixth amendment of the federal constitution was "[u]sed in recognition of the Common Law Right to have one's 'friends' speak for a Defendant...." Skuse argued alternatively that his constitutional right to freedom of contract would be infringed if he was not allowed to have nonlawyers speak on his behalf. Thereafter, Skuse reiterated his request, stating that he was "not a well versed public speaker," and arguing that his constitutional rights to counsel, self-representation, and free speech guarantee the right to be represented by nonlawyers as "counsel or co-counsel, whichever the accused wishes to have." Skuse's arguments find support in Note, *The Criminal Defendant's Sixth Amendment Right to Lay Representation*, 52 U.Chi.L.Rev. 460 (1985).

The assistant district attorney's written response to Skuse's request for lay representation stated:

> The State would defer to the court on the defendant's request for Counsel. The defendant was told that occasionally pro per defendant's [sic] are permitted to have friends sit at counsel table but not speak for the defendant. To do otherwise *might* subject the defendant's friend to the provisions of AS 08.08.230. [Emphasis added.]

In a written order, Magistrate McBride denied Skuse's motion for unlicensed counsel, reasoning that there is no constitutional right to the assistance of lay counsel and that "the court finds itself unable to grant that which Alaska law declares to be a criminal offense." However, the magistrate did permit Skuse's friends, Kevin Morin and Lynda Brazier, to sit with him at counsel table.

■ Whether a defendant may be represented by a person who is not a licensed attorney is a question of first impression in Alaska. However, the issue has been considered by other courts. These courts are unanimous in holding that the United States Constitution does not establish a right to the assistance of a person other than an attorney as counsel. *See, e.g., United States v. Wilhelm*, 570 F.2d 461 (3d Cir.1978); *United States v. Whitesel*, 543 F.2d 1176 (6th Cir.1976), *cert. denied*, 431 U.S. 967, 97 S.Ct. 2924, 53 L.Ed.2d 1062 (1977); *United States v. Grismore*, 546 F.2d 844 (10th Cir.1976); *United States v. Cooper*, 493 F.2d 473, (5th Cir.), *cert. denied*, 419 U.S. 859, 95 S.Ct. 108, 42 L.Ed.2d 93 (1974); *Turner v. American Bar Ass'n*, 407 F.Supp. 451 (N.D.Tex.1975), *aff'd sub nom., Taylor v. Montgomery*, 539 F.2d 715 (7th Cir.1976) and *Pilla v. American Bar Ass'n*, 542 F.2d 56 (8th Cir.1976); *United States v. Stockheimer*, 385 F.Supp. 979 (W.D.Wis.1974), *aff'd*, 534 F.2d 331 (7th Cir.), *cert. denied*, 429 U.S. 966, 97 S.Ct. 397, 50 L.Ed.2d 335 (1976); *State v. Peterson*, 266 N.W.2d 103 (S.D.1978); *Seattle v. Shaver*, 23 Wash.App. 601, 597 P.2d 935 (1979).

As some of the courts have noted, the right to assistance of legal counsel and the right to self-representation under the federal constitution, recognized in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), while distinguishable from each other, are also distinguishable from the putative right to lay representation. *See, e.g., United States v. Wilhelm*, 570 F.2d at 465–66; *State v. Peterson*, 266 N.W.2d at 105–06. In *Faretta*, the United

---

1. Skuse does not argue on appeal that he was not legally qualified to represent himself. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *McCracken v. State*, 518 P.2d 85, 91–92 (Alaska 1974).

States Supreme Court recognized that self-representation is an independent right which does not arise "mechanically" from a defendant's power to waive the right to the assistance of counsel. 422 U.S. at 819–20 n. 15, 95 S.Ct. at 2533 n. 15, 45 L.Ed.2d at 572–73 n. 15. Similarly, an "independent right to the assistance of a nonlawyer cannot be mechanically inferred from the right to waive the assistance of a lawyer and to represent oneself, even though self-representation will usually result in advocacy by a non-lawyer." *United States v. Kelley,* 539 F.2d 1199, 1202 (9th Cir.), *cert. denied,* 429 U.S. 963, 97 S.Ct. 393, 50 L.Ed.2d 332 (1976). We, therefore, conclude that Skuse had no right under the United States Constitution to lay representation.

Skuse has not suggested that he should have rights under the Alaska Constitution with respect to the issue of lay counsel in addition to those provided under the federal constitution, and we do not reach that issue at this time.

Even in the absence of a constitutional entitlement to lay representation, some federal courts have held that it is nevertheless within a trial court's discretion to allow lay representation of a criminal defendant. *See, e.g., United States v. Stockheimer,* 385 F.Supp. at 983–85 (the Constitution does not forbid the assistance of any person whose participation does not appear to threaten the orderly conduct of the trial). *See also United States v. Wilhelm,* 570 F.2d at 466–67 (adopting *Whitesel* standard for exercise of discretion); *United States v. Whitesel,* 543 F.2d at 1180 (trial court has discretion to permit lay representation but only where lay representative was sufficiently learned in the law to adequately represent the defendant). *But see United States v. Grismore,* 546 F.2d at 847 (within discretion of trial judge to disallow lay representation for criminal defendant even in those instances where it has been held to be permissible).

At least two state courts have held that there is no discretion to allow lay representation when representation by an unlicensed attorney constitutes a statutory criminal offense. In *State v. Peterson,* 266 N.W.2d 103 (S.D.1978) the South Dakota Supreme Court held that, absent a finding that a defendant has a constitutional right to such representation, the public interest in "an orderly and efficient criminal justice system" would be thwarted by allowing a nonlawyer who is not bound by legal ethics to actively participate in court proceedings. *Id.* at 108–09. The court also anticipated that "[b]y demanding his own lay counsel the defendant might then complain of denial of effective representation because of incompetence of counsel." *Id.* at 108. Similarly, in *Seattle v. Shaver,* 23 Wash. App. 601, 597 P.2d 935 (1979) the Washington Court of Appeals held that the state statute proscribing the practice of law without a license foreclosed representation by the husband of the defendant.

■ While the issue is close, we are not satisfied that Alaska law, as embodied in AS 08.08.230 (misdemeanor of unlawful practice of law) and construed by the Alaska Supreme Court, precludes the exercise of discretion by a court to allow lay representation. Alaska Statute 08.08.210 reads in pertinent part:

> *Who may practice law.* (a) A person may not engage in the practice of law in the state unless the person is licensed to practice law in Alaska and is an active member of the Alaska Bar. A member of the bar in good standing in another jurisdiction may appear in the courts of the state under the rules the supreme court may prescribe.
>
> (b) The practice of law shall be defined in the Alaska Bar Rules.

Alaska Statute 08.08.230 states in pertinent part:

> *Unlawful practice a misdemeanor.* (a) Any person not an active member of the Alaska Bar and not licensed to practice law in Alaska who engages in the practice of law or holds out as entitled to engage in the practice of law as that term is defined in the Alaska Bar Rules, or an active member of the Alaska Bar who wilfully employs such a person knowing that the person is engaging in the prac-

tice of law or holding out as entitled to so engage is guilty of a class A misdemeanor.

The *only* definition in the Alaska Bar Rules of what constitutes the practice of law is found in Rule 2, Section 2(c), and pertains only to eligibility for admission to the bar on the basis of reciprocity. Subsection (c) reads:

(c) For the purposes of this section, the "active practice of law" shall mean:

(1) engaged in representing one or more clients on a fee basis in the private practice of law;

(2) serving as an attorney in governmental employment, provided graduation from an ABA or AALS accredited law school is a required qualification of such employment;

(3) serving as counsel for a non-governmental corporation, entity or person and performing legal services of a nature requiring a license to practice law in the jurisdiction(s) in which performed;

(4) teaching law at one or more accredited law schools in the United States, its territories, or the District of Columbia;

(5) serving as a judge in a court of the United States, its states, its territories, or the District of Columbia; or

(6) employed by a Legal Services Corporation program or a not-for-profit law firm, performing legal services of a nature requiring a license to practice law in the jurisdiction(s) in which performed.

Alaska Bar R. 2, § 2(c).

There is no Bar Rule or Alaska Statute that describes which activities constitute the unauthorized practice of law. *Matter of Robson*, 575 P.2d 771, 780 (Alaska 1978) "[The practice of law] has been defined by Alaska Statute for the qualification of justices [AS 22.05.070], but this definition is not necessarily the same as that to be used in determining whether ... certain activities constitute the unauthorized practice of law." 575 P.2d at 781. Although the Alaska Bar Association is authorized by the legislature to recommend such a definition to the state supreme court, see AS 08.08.-080(1), it has yet to do so.[2]

Furthermore, neither the supreme court's statutory constructions concerning "the practice of law," in *Application of Babcock*, 387 P.2d 694, 697–98 (Alaska 1963) (that the attorney applicant for bar reciprocity be engaged in the "business" of law) and in *Application of Payne*, 430 P.2d 566, 569 (Alaska 1967) (that a substantial portion of the applicant's time and energies were devoted to providing legal services) nor the Bar Association's only rule defining the practice of law, Alaska Bar R. 2, § 2(c)(1)–(6), require us to conclude that a single act of not-for-profit lay assistance at trial amounts to the unauthorized practice of law.

We are satisfied that the magistrate's resolution of the issue in this case was within her discretion. It is not necessary to determine now whether, in some circumstances, a trial judge may have limited discretion to permit lay representation of a criminal defendant. Skuse was permitted to have friends at counsel table and to have them consult with him. At most, the friends were denied the opportunity to address the court. Since there is no constitutional right to lay representation, we would not adopt a rule that denial of lay representation constitutes prejudice *per se.* Consequently, absent a showing of prejudice, we will not consider limitations on lay representation an abuse of discretion. *Cf. Risher v. State*, 523 P.2d 421, 424–25 (Alaska 1974) (to prevail on a claim of constitu-

**2.** On three occasions, the Alaska Supreme Court has been faced with the problem of defining "the practice of law." *Matter of Robson*, 575 P.2d at 779–81; *Application of Payne*, 430 P.2d 566 (Alaska 1967); and *Application of Babcock*, 387 P.2d 694 (Alaska 1963). Only one of these cases has involved the unauthorized practice of law. In *Matter of Robson*, the court concluded that an attorney while suspended from the prac-

tice of law held himself out as an attorney and engaged in unauthorized practice when he performed legal services, gave legal advice in setting up a prepaid legal services plan, signed a letter of a type usually written by an attorney with "attorney at law" printed below his signature, and permitted a person to refer to him in court as his attorney without making any clarifying comments. 575 P.2d at 779–81.

tionally ineffective assistance of counsel, a party must establish "prejudice," *i.e.*, that the attorney's lack of competence contributed to the conviction). Skuse has made no colorable claim of prejudice due to the denial of his request for lay representation. Therefore a remand for an evidentiary hearing on the issue is not required. *See Risher*, 523 P.2d at 425 & n. 20.

Skuse raised several other issues on appeal. We will briefly address those issues now.

Prior to trial, Skuse filed a motion to dismiss the charges for driving while intoxicated (DWI) and refusal to submit to a chemical breath test, based on a lack of probable cause for his arrest. Skuse also filed supporting affidavits. Skuse's argument seems to be that while there may have been reasonable suspicion for the police officer's investigatory stop, Skuse's demeanor and responses to the officer's questions did not elevate reasonable suspicion to the level of probable cause for a DWI arrest. The complaint itself stated that it was

> based upon the observations of Soldotna Police Officer Don Fritz ... after observing that the vehicle [driven by Skuse] was driving erratically on K-Beach Road. This complaint is further based on the fact that the defendant had the odor of an alcoholic beverage on his breath and that his balance was unsteady; and that he refused to tell Officer Fritz what he had consumed.

The complaint was not signed by Officer Fritz, but by another officer.

In response to Skuse's motion, the assistant district attorney filed an opposition, stating only

> The State opposes the defendant's motion to dismiss for lack of probable cause for the arrest. Assuming, *arguendo*, that the arrest was not proper, there is no authority to dismiss the case.
>
> The State believes the arrest was in all respects proper but even if it were not, there is no authority that the State is aware of, for dismissing the case.

> Therefore, the State requests the defendant's motion be denied.

Without holding a hearing, Magistrate McBride summarily denied Skuse's motion to dismiss. Nowhere in the record is there any indication that the magistrate made the requisite finding, *i.e.* whether there was probable cause to arrest Skuse.

Skuse attempted to renew his probable cause motion by (1) moving that "an evidentiary hearing will be held during the trial," and (2) moving to dismiss under Criminal Rule 43(c) (court may dismiss *sua sponte*). At a pretrial motions hearing on March 11, 1985, Skuse explained the basis for his Rule 43(c) motion.

> SKUSE: I was here to point out that there is [sic] affidavits in my probable cause report that the witnesses are going to testify that I was completely sober that night. Just on the basis of those four witnesses I think the court should take it into consideration to dismiss in the interests of justice. I think we are wasting the court's time on the drunk driving business since its obvious that those statements affidavits from the four witnesses (indiscernible) that I was not intoxicated.
>
> JUDGE: That is a question for the jury to decide....

Following this discussion, Skuse withdrew his request for an evidentiary hearing.

On appeal, Skuse argues that (1) no probable cause existed for his arrest, and (2) magistrate erred when she denied his motion to dismiss due to lack of probable cause. "There was never any evidence to show drunkenness of Skuse ... and the arrest was improper."

▮ The trial court properly held that probable cause to arrest was not an element of the offense of refusing to submit to a chemical breath test. Consequently, a lack of probable cause would not necessarily require dismissal of the prosecution. Nevertheless, if the police did not have probable cause to arrest Skuse, then he was entitled to have evidence of his refusal suppressed. *See McCracken v. State*, 685 P.2d 1275, 1279 (Alaska App.1984) (Single-

ton, J. and Bryner, C.J., concurring). Skuse was not represented by counsel, and under the circumstances, we believe the trial court should have construed Skuse's attack on his arrest as a motion to suppress evidence of his refusal to submit to a breath test. Therefore, the trial court should have ruled on Skuse's claim that the arrest was not supported by probable cause since a ruling favorable to Skuse would have resulted in the suppression of the only evidence against him on the refusal issue, and made the ultimate dismissal of the charge a foregone conclusion.

 We agree with the state, however, that a remand is not necessary. Construing the record most favorably to Skuse, we find that there was probable cause to arrest as a matter of law.[3] Skuse's erratic driving, his difficulty in furnishing proof of identification, and the odor of alcohol emanating from his vehicle satisfy the test of probable cause. Skuse argues that the jury at trial acquitted him of DWI, evidencing a belief that the state lacked probable cause for his arrest. Skuse has confused the test for probable cause with that for a conviction at trial, the requirement that he be found guilty beyond reasonable doubt. A reasonable doubt precludes a conviction, it does not preclude an arrest.[4] A valid arrest may be made even though the police lack the necessary evidence to prove guilt beyond a reasonable doubt.[5]

3. At trial, the police officer testified as follows: Skuse's vehicle had a taillight out and was weaving continuously within its lane. It also had expired registration stickers. At an intersection, Skuse made an unnecessarily evasive response to the perpendicular approach of a vehicle; Skuse momentarily steered ¼ of his truck into the oncoming lane. When Skuse was stopped and asked for his driver's license, he fumbled in his wallet for a few seconds before finding it, even though the police officer could see a driver's license from where he stood. Skuse rolled his window down only four inches. When he was asked for the registration, Skuse immediately retrieved it from the glove compartment, but tore it accidentally as he was taking it out of an envelope. The registration was valid. Skuse seemed confused by the officer's question about expired stickers and brought out another, old registration from the glove compartment. The police officer asked Skuse where he was coming from (Soldotna) and where he was going (home, to his girlfriend's). The police officer asked him where he had been in Soldotna. Skuse told him it was none of his business. During this conversation about Skuse's whereabouts, Officer Fritz noticed the odor of alcohol coming from the vehicle. (Fritz corrected himself, having first said that he detected the odor of alcohol on Skuse's breath.)

Officer Fritz asked Skuse how much he had to drink. Skuse told him it was none of his business. Fritz asked Skuse several times to get out of the car to perform field sobriety tests. Skuse refused. Fritz then asked Skuse to recite the alphabet. Skuse again refused, stating that he would not do anything unless arrested. Fritz then placed Skuse under arrest.

4. The standard for determining whether probable cause existed is whether, before making an arrest, a police officer is aware of facts and circumstances which are sufficient in themselves to warrant a prudent person in believing that an offense has been or is being committed. *Pistro v. State,* 590 P.2d 884 (Alaska 1979); *Nome v. Ailak,* 570 P.2d 162 (Alaska 1977); *McCoy v. State,* 491 P.2d 127 (Alaska 1971); *Russell v. Anchorage,* 706 P.2d 687 (Alaska App. 1985).

5. Skuse's additional arguments will be briefly addressed.

(1) Skuse also argues that he was generally denied due process under the state and federal constitutions. He has not particularized this argument in his brief and we, therefore, consider it abandoned. *Dunbar v. State,* 677 P.2d 1275, 1278 n. 1 (Alaska App.1984).

(2) Skuse argues that the magistrate abused her discretion by requiring him to *voir dire* some of the jurors in groups of four. Having considered the whole record, we find no abuse of discretion. *Bolhouse v. State,* 687 P.2d 1166, 1172–73 (Alaska App.1984); *Ketzler v. State,* 634 P.2d 561 (Alaska App.1981).

(3) Skuse argues that he had either a state, a federal or a common law right to a jury of twelve persons even though he was tried for a misdemeanor in district court. Skuse was only entitled to a six person jury. *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) (federal constitution); *Lopez v. Anchorage,* 597 P.2d 146 (Alaska 1979) (state constitution). To the extent that Skuse had rights at common law which were not incorporated into the state or federal constitution, the legislature is free to abrogate them. AS 01.10.010. (adopting so much of the common law not inconsistent with the Constitution of the State of Alaska or the Constitution of the United States, or with any law passed by the legislature of the State of Alaska, as the rule of decision in Alaska).

(4) Skuse argues that a person charged with multiple misdemeanors may be given consec-

The judgment of the district court is AFFIRMED.

utive sentences, exceeding in total one year incarceration. *See, e.g., State v. Graybill,* 695 P.2d 725, 726 (Alaska 1985) (defendant sentenced on fourteen counts of misdemeanor fish and game violations received consecutive sentences totalling seven years imprisonment with five and one-half years suspended). In such a case, he reasons he was entitled to have his case presented to a grand jury, as are persons charged with a felony. We are satisfied that the constitution does not require a grand jury review of misdemeanor charges, no matter how many are joined together. Alaska Const. art. 1, § 8.

(5) Skuse argues that he was deprived of a right to jury nullification. Skuse was not entitled to argue nullification to the jury or *voir dire* the jury regarding nullification. *Hartley v. State,* 653 P.2d 1052, 1055 (Alaska App.1982). Skuse was not entitled to present expert witnesses on the law or to offer law books as exhibits. In a jury trial, principles of law, including statutes and constitutional principles, are presented to the jury in the form of instructions, not as exhibits.

(6) Skuse has not established a right to a transcript of his arraignment.

(7) Skuse complains of certain evidentiary rulings. The court properly precluded evidence of an alleged police conspiracy against Skuse since, on this record, its extremely limited probative value on the issue of the arresting officers' bias was outweighed by the risk of confusing the issues and unreasonably prolonging the trial. A.R.E. 403. *Wilson v. State,* 680 P.2d 1173, 1178 (Alaska App.1984).

(8) Skuse argues that a person who elects to proceed without an attorney is entitled to legal advice from the trial court which was not forthcoming. Skuse is in error. The trial court need not represent a *pro se* defendant beyond ensuring a fair trial. We are satisfied that Skuse received a fair trial.

(9) Finally, Skuse argues that the trial court sided with the prosecution denying him a fair trial. The record does not support this contention.