**Robert Lawrence PERRY,**
**Plaintiff–Appellant,**

**v.**

**BOARD OF COUNTY COMMISSIONERS OF LARIMER COUNTY; the Office of the Larimer County Sheriff; and Russell A. Buck, Deputy Sheriff, Defendants–Appellees.**

No. 96CA0956.

Colorado Court of Appeals,
Div. I.

May 29, 1997.

Rehearing Denied July 17, 1997.

Certiorari Denied Jan. 12, 1998.

Robert Lawrence Perry, Pro Se.

George H. Hass, County Attorney, Jeannine S. Haag, Assistant County Attorney, Fort Collins, for Defendants–Appellees.

Opinion by Judge CRISWELL.

Plaintiff, Robert Lawrence Perry, appeals the summary judgment entered in favor of defendants, the Board of County Commissioners of the County of Larimer, the Office of the Larimer County Sheriff, and Russell Buck, a sheriff's deputy, dismissing his claims of constitutional violations. We affirm.

Plaintiff commenced this action after he was arrested and charged with trespass for entering and remaining in a restricted stairway in the Larimer County Courthouse. Plaintiff's complaint asserted a tort claim for false arrest and a constitutional claim, presumably under 42 U.S.C. § 1983 (1994), for violation of his Fourth, Fifth, and Sixth Amendment rights, as well as for violation of several Colorado statutes.

Defendants moved for dismissal of plaintiff's claims pursuant to C.R.C.P. 12(b)(1) and (5). The trial court granted defendants' motion, in part, and dismissed plaintiff's false arrest claims and the constitutional claims against the board of county commissioners.

After discovery was conducted, and based upon the undisputed facts revealed, defendants moved for summary judgment on the remaining constitutional claims. The trial court granted defendants' motion, determining that plaintiff's constitutional rights had not been violated.

I.

Plaintiff first contends the trial court erred by accepting defendants' untimely motion for summary judgment. We disagree.

C.R.C.P. 56(c) requires a motion for summary judgment to be filed no later than 75 days before the date set for trial, "unless otherwise ordered by the court."

Here, trial was set for May 28, 1996, but defendants' motion was not filed until April 18, less than 75 days before the trial date.

Nevertheless, the case management order here, to which plaintiff expressly consented, provided that all pre-trial motions were to be filed "within 40 days" of trial. Even if it is assumed that this order intended to say "not less than 40 days before" trial, defendants met this time restriction. Their motion, therefore, was not untimely.

II.

We note, preliminarily, that, in conjunction with his constitutional claims, plaintiff alleged that defendants violated § 16–3–403, C.R.S. (1986 Repl.Vol. 8A), and that

such violation is actionable under § 1983. This contention is without merit.

█ Because the rights enforceable under § 1983 are only those recognized either by the federal constitution or by a federal statute, § 1983 cannot be used to enforce purely state rights, including rights arising under state statutes. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *Espinoza v. O'Dell,* 633 P.2d 455 (Colo.1981).

Hence, this claim was properly dismissed by the court, irrespective whether defendants' motion otherwise met the requirements for entry of a summary judgment.

## III.

### A.

Review of a judgment granting a motion for summary judgment is *de novo.* *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo. 1995).

In reviewing a trial court's grant of summary judgment, we must determine whether there is a clear showing that there is no issue of material fact and, therefore, whether the moving party is entitled to judgment as a matter of law. *Churchey v. Adolph Coors Co.,* 759 P.2d 1336 (Colo.1988); *Knappenberger v. Shea,* 874 P.2d 498 (Colo.App.1994). In making this determination, we must resolve all doubts as to the existence of material factual issues against the moving party and give the non-moving party the benefit of any favorable inference that may be drawn from the disclosed facts. *Kaiser Foundation Health Plan v. Sharp,* 741 P.2d 714 (Colo. 1987).

However, once the moving party establishes that no material fact is in dispute, the burden of proving the existence of a factual issue shifts to the opposing party. Failure of the opposing party to satisfy its burden entitles the moving party to summary judgment. *Gifford v. City of Colorado Springs,* 815 P.2d 1008 (Colo.App.1991).

In addition, arguments or evidence not presented to the trial court in connection with a motion for summary judgment will not be considered on appeal. *See County Court v. Ruth,* 194 Colo. 352, 575 P.2d 1 (1977), *appeal after remand,* 198 Colo. 6, 595 P.2d 237 (1979) (appellate jurisdiction limited to issues which had been before the district court in proper procedural posture).

### B.

Plaintiff first contends that the trial court erred in dismissing his civil rights claim based upon alleged Fourth Amendment violations. We disagree.

█ Pursuant to the Fourth Amendment guarantee against unreasonable seizure, it has been determined that law enforcement agents must have probable cause before they may subject a person to the deprivation of liberty that results from an arrest. *People v. Davis,* 903 P.2d 1 (Colo.1995). Probable cause to arrest exists if the totality of the facts and circumstances known to the arresting officer at the time of the arrest are sufficient to support a reasonable belief that a crime has been or is being committed. *People v. Washington,* 865 P.2d 145 (Colo. 1994).

The provision under which plaintiff was charged, § 18-4-503, C.R.S. (1996 Cum. Supp.), provides that: "[A] person commits the crime of second degree criminal trespass if such person unlawfully enters or remains in or upon premises of another which are enclosed in a manner designed to exclude intruders...."

Here, undisputed evidence establishes that plaintiff was in a restricted area of the courthouse when security personnel apprehended him. Plaintiff also concedes that the area was enclosed with locked doors and "security area" signs. Plaintiff does dispute the exact nature of the conversation between himself and the security officer who first apprehended him. However, defendant Buck's affidavit in support of the warrantless arrest, based upon that security officer's statements that plaintiff was apprehended while in the enclosed stairway, was uncontroverted.

█ Based upon this undisputed evidence, we agree with the trial court's conclusion that the knowledge possessed by defendant Buck at the time of the arrest was sufficient

for a reasonable police officer to believe that there was probable cause to arrest plaintiff. The fact that plaintiff was eventually acquitted does not affect this conclusion. *See Beyer v. Young,* 32 Colo.App. 273, 513 P.2d 1086 (1973) (officer's right to make an arrest not dependent upon the outcome of the trial).

■ Plaintiff also argues that his arrest was pretextual and was actually motivated by the outcome of an earlier proceeding in juvenile court. However, so long as plaintiff's arrest was supported by probable cause, any allegations of improper motivation for the arrest are irrelevant. *See People v. Thompson,* 793 P.2d 1173 (Colo.1990) (objective probable cause standard makes it unnecessary to engage in a subjective analysis of an officer's motive for making an arrest).

Hence, because no triable factual issue exists with respect to plaintiff's claim that defendants violated his Fourth Amendment rights, this claim was properly dismissed by the trial court.

### C.

■ Plaintiff also contends that the trial court erred in dismissing his § 1983 claim based on alleged Sixth Amendment violations. We again disagree.

Plaintiff concedes that the Sixth Amendment right to counsel attaches only in conjunction with court proceedings or proceedings preliminary thereto. *People v. Vigoa,* 841 P.2d 311 (Colo.1992). In this case, such proceedings commenced only upon the issuance of the summons and complaint. *See* § 16–5–101(1)(d)(I), C.R.S. (1986 Repl.Vol. 8A).

Plaintiff asserts that he requested to speak with an attorney when defendant Buck arrived at the courthouse security station and that Buck refused such request. Plaintiff also contends that Buck then questioned him. However, it is undisputed that the summons and complaint had not been issued at this point.

Plaintiff also claims that he made a request to speak with an attorney after the summons and complaint were issued and that such request was refused. However, plaintiff does not claim that he was questioned by defendant Buck after the summons and complaint were issued.

Hence, no Sixth Amendment violation has been alleged. Accordingly, the trial court did not err in dismissing this claim.

### D.

Plaintiff next contends that the trial court erred in dismissing his civil rights claim based upon alleged Fifth Amendment violations. We are not persuaded.

The undisputed evidence establishes that plaintiff was handcuffed by the security personnel who apprehended him in the restricted stairwell. Plaintiff claims that, when defendant Buck arrived, he was frisked and questioned without receiving any *Miranda* warning and that he was refused his request for an attorney.

In addition to the Sixth Amendment right to counsel described above, the Supreme Court has recognized an additional Fifth Amendment right to counsel, based upon its jurisprudence establishing a number of prophylactic rights to counteract the pressures of custodial interrogation, including the right to have counsel present during such an interrogation. *McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991).

■ This Fifth Amendment guarantee arises independently of any court proceedings and arises upon the suspect's invocation of such right during custodial interrogation after a *Miranda* advisement. *People v. Vigoa, supra.*

■ In a criminal prosecution, the failure of law enforcement officials to comply with this Fifth Amendment guarantee will result in suppression of any evidence obtained as a result of the improper interrogation. However, as the trial court recognized, in the civil context, the simple failure to issue *Miranda* warnings does not give rise to a § 1983 action. *Warren v. City of Lincoln,* 864 F.2d 1436 (8th Cir.1989) (the remedy for a *Miranda* violation is the suppression of any compelled self-incrimination, not a § 1983 action); *Bennett v. Passic,* 545 F.2d 1260 (10th Cir.1976) (failure to give *Miranda* warning does not subject a police officer to liability under § 1983).

Here, however, plaintiff alleges more than just a failure to give *Miranda* warnings. He alleges that defendant Buck continued to question him after he had requested to speak with an attorney, pursuant to his Fifth Amendment right. He also asserts that defendant Buck used the exculpatory answers provided by plaintiff as corroboration that plaintiff had entered the enclosed stairway and, hence, compelled him to be a witness against himself.

Under similar circumstances, some courts have held that, to constitute a violation of the Fifth Amendment sufficient to sustain a § 1983 claim, the evidence elicited must be admitted in the criminal case. *Giuffre v. Bissell*, 31 F.3d 1241 (3rd Cir.1994). However, the Ninth Circuit has held that a § 1983 claim for violation of the self-incrimination clause can be made out, even though a plaintiff is never formally charged and none of his statements are offered in evidence, if the statements are compelled by a law enforcement agent's coercive behavior in pursuit of a confession. *Cooper v. Dupnik*, 963 F.2d 1220 (9th Cir.1992).

Nevertheless, the *Dupnik* court was careful to distinguish such coercive conduct from officers' continuing "to talk to a suspect after he asserts his rights and where they do so in a benign way, without coercion or tactics that compel him to speak"; the latter conduct does not give rise to a Fifth Amendment cause of action under § 1983. *Cooper v. Dupnik, supra*, 963 F.2d at 1244.

Both approaches emphasize the necessity for the alleged *Miranda* violation to result in damage to the plaintiff before a claim under § 1983 to be actionable. If the *non-Mirandized* statements are received in evidence, the occurrence of damage is evident. Likewise, if the questioning consists of coercion, damage results. Absence damage of some sort resulting from a failure to receive a *Miranda* advisement, no actionable § 1983 claim can be stated.

The judgment is affirmed.

METZGER and MARQUEZ, JJ., concur.